IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

**CATHY LYNN ROOFE**                                                                    **PLAINTIFF**

v.                                            No. 4:12–CV–162–BD

**MICHAEL J. ASTRUC, Commissioner,**
**Social Security Administration**                                                       **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

Cathy Lynn Roofe sought judicial review of the partially unfavorable decision on her application for disability income benefits.[1] Ms. Roofe based disability on a broken left forearm, nerve damage, and numbness in her left hand and fingers.[2] Ms. Roofe's application flowed from a motor vehicle accident.

**Ms. Roofe's impairments**. As a result of an accident that occurred on February 17, 2010, both bones of Ms. Roofe's left forearm—the radius and the ulna—were fractured.[3] The injury was a significant one, requiring the surgical implementation of stainless steel implants to set the broken bones and guide the healing process.[4] The

---

[1] *See* docket entry # 2.

[2] SSA record at p. 115.

[3] *Id*. at p. 174.

[4] *Id*. at p. 183.

bones healed slowly.  During the process, Ms. Roofe developed complex regional pain syndrome.[5]

The bones eventually healed, but Ms. Roofe continued to experience pain. Ultimately, Ms. Roofe sought removal of the steel hardware used to set her broken bones.[6]  The removal of the hardware helped with the pain.  During her first post-removal visit, Ms. Roofe told her orthopedist that she still had some pain, but that the pain was very manageable with medication.[7]  Seven weeks after hardware removal—on April 25, 2011—Ms. Roofe reported her symptoms were a lot better.[8]  That report served as the basis of a partially favorable decision.

**The Commissioner's decision**.  After considering Ms. Roofe's application, the Commissioner's ALJ determined Ms. Roofe was disabled from the date of the accident

---

[5] *Id*. at p. 230. Complex regional pain syndrome usually involves an arm or leg. "There are two forms: type I, which usually develops following an injury which does not involve[] the nerves, and type II, which is associated with nerve injury." Attorneys' Dictionary of Med. C-27565.  A nerve condition study showed Roofe had no nerve compression.  SSA record at p. 311.  "In cases where there has been an injury, pain is out a proportion to the severity of injury and becomes more intense, rather than less, with time."  1 Attorneys' Dictionary of Med. C-27565.

[6] SSA record. at p. 302.

[7] *Id*. at p. 291.

[8] *Id*. at p. 286.

through April 25, 2011—the date her symptoms were a lot better.[9] The ALJ awarded disability benefits for that time period.

The ALJ, however, concluded that Ms. Roofe was no longer disabled on April 26, 2011.[10] The ALJ determined that although Ms. Roofe had severe impairments—the fractures of the left forearm and mild complex regional pain syndrome—Ms. Roofe had the residual functional capacity ("RFC") to do light work, except that she could perform no more than frequent handling and fingering with her non-dominant left arm.[11] Because a vocational expert testified that a person with that RFC could do Ms. Roofe's past work as a telemarketer, and identified two other jobs such a person could do,[12] the ALJ concluded that Ms. Roofe was not disabled after April 25, 2011.[13]

---

[9] *Id*. at p. 19.

[10] *Id*. at p. 23.

[11] *Id*. at p. 20.

[12] *Id*. at p. 42.

[13] *Id*. at p. 22.

After the Commissioner's Appeals Council denied Ms. Roofe's request for review,[14] the ALJ's decision became a final decision for judicial review.[15] Ms. Roofe filed this case to challenge the ALJ's conclusion as it applied after April 25, 2011.

**Ms. Roofe's argument**. Ms. Roofe's argument generally attacks the ALJ's determination that her condition had medically improved on April 25, 2011.[16] She maintains that the medical evidence showed that she re-fractured her arm on May 9, 2011. She asserts that continuing pain prevented her from working. She contends substantial evidence did not support the ALJ's conclusion that she was not disabled after April 25, 2011.

**Evidence after April 25, 2011**. The medical evidence of Ms. Roofe's impairments after April 25, 2011 was scant: (1) a report of an x-ray of Ms. Roofe's left forearm, and (2) a nurse intake note. Although scant, the evidence was highly probative of Ms. Roofe's claim because it supported her allegations. The ALJ, however, did not discuss the evidence.

---

[14] *Id*. at p. 1.

[15] *See Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992) (stating that "the Social Security Act precludes general federal subject matter jurisdiction until administrative remedies have been exhausted" and explaining that the Commissioner's appeal procedure permits claimants to appeal only final decisions).

[16] Docket entry # 11.

"In denying disability, the ALJ does not have to discuss every piece of evidence presented, but must develop the record fully and fairly."[17]  Here, failing to discuss the x-ray report and the nurse intake note was harmful error because the failure implicated not only a failure to develop the record, but also undermined the ALJ's assessment of Ms. Roofe's credibility.

**Ms. Roofe's credibility**.  Even after reporting improvement in her pain, Ms. Roofe insisted she could not work.[18]  Ms. Roofe testified that she broke her left forearm two months after hardware removal.[19]  She maintained that her doctors told her she could not work.[20]  She testified that pain interfered with her ability to work.  Ms. Roofe's testimony placed the question of medical improvement at issue.  The ALJ implicitly discounted the credibility of Ms. Roofe's testimony by finding her impairments had improved on April 25, 2011.  The undiscussed evidence, however, supported the credibility of Ms. Roofe's testimony.

---

[17] *Miller v. Shalala*, 8 F.3d 611, 613 (8th Cir. 1993).

[18] SSA record at pp. 38-39.

[19] *Id*. at p. 32.

[20] *Id*. at p. 37.

**The undiscussed evidence**.  The x-ray report documented radiological findings on May 9, 2011—two months after hardware removal.[21]  The stated purpose of the x-ray was: "[patient] here with [history] left [forearm] fracture with surgery with possible new injury."[22]  The report identified a healed fracture through the mid shaft of the left radius and the removal of hardware from the ulna and the radius.  These findings referred to the fractures that occurred on February 17, 2010, and the subsequent removal of the steel hardware setting the fractures.

The report, however, also identified an acute traverse fracture in the mid shaft of the left ulna.  This fracture had to be a new fracture because Ms. Roofe's orthopedist determined that the earlier fractures had healed.  Because the x-ray report documented a new fracture two months after hardware removal, the report supported the credibility of Ms. Roofe's testimony.

The nurse intake note also supported the credibility of Ms. Roofe's testimony.  The note indicated Ms. Roofe rated her pain as 7 on 10-point scale, beginning on May 9, 2011.  Because the pain on-set date coincided with the date of the x-ray, the note suggested a flare-up of Ms. Roofe's complex regional pain syndrome.[23]  Although not

---

[21] *Id*. at p. 281.

[22] *Id*.

[23] When Ms. Roofe asked for hardware removal, her orthopedist warned that removing the hardware could cause a flare-up of complex regional pain syndrome, and

conclusive of a flare-up, it was sufficient to raise a question about medical improvement and to place the ALJ on notice of the need to obtain medical evidence probative about Ms. Roofe's impairments after April 25, 2011.[24]

**Conclusion**. The failure to consider the second fracture likely resulted from over-sight, but the failure nevertheless undermined the ALJ's determination about medical improvement. The finding of medical improvement was dispositive in this case because it served as the basis for the ALJ's RFC determination—a critical element in reaching the unfavorable decision. Additional medical evidence might have indicated that Ms. Roofe's impairments had not improved, but only the Commissioner can resolve that question. For that reason, the court REVERSES the Commissioner's decision and REMANDS this case.[25]

On remand, the Commissioner should obtain any treatment records associated with the May 9, 2011 x-ray and any other treatment records probative of Ms. Roofe's claim after April 25, 2011 through the date of the decision. After obtaining those records, the Commissioner should reconsider Ms. Roofe's application for that time period.

---

perhaps a loss of mobility and function. *Id*. at p. 302.

[24] *Johnson v. Astrue*, 627 F.3d 316, 320 (8th Cir. 2010).

[25] 42 U.S.C. 405(g).

Finally, the court is mindful of the claimant's duty to prove her claim. This remand could have been avoided had Ms. Roofe or her advocate obtained medical evidence about the second fracture, submitted the evidence to the ALJ, or at least submitted the evidence to the Appeals Council.

It is so ordered this 20th day of November, 2012.

_____
UNITED STATES MAGISTRATE JUDGE